Filed 5/27/25  Encinostar v. Malka CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ENCINOSTAR, LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PERLE MALKA,<br><br>    Defendant and Appellant. | B328417<br><br>(Los Angeles County<br> Super. Ct. No. 22VECV01419) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed.

Perle Malka, in pro. per., for Defendant and Appellant.

Law Offices of Mark Goodfriend and Mark Goodfriend for Plaintiff and Respondent.

# INTRODUCTION

Appellant Perle Malka (Malka) was evicted from her residence by respondent Encinostar, LLC (Encinostar). The eviction occurred after Encinostar obtained a default judgment against Malka in unlawful detainer proceedings. Malka challenged the default judgment in a series of ex parte applications, which the trial court denied, and in a motion to reconsider the ruling on one of those applications, which the trial court also denied. Malka now appeals from those denials, as well as from the judgment itself. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2022, Encinostar filed a complaint for unlawful detainer against Malka, seeking to regain possession of a house located on Woodley Avenue in Encino (Woodley House), as well as attorney's fees and damages of $450 per day starting from September 22, 2022. The complaint alleged Malka was using Woodley House as a party rental in violation of various regulations, creating a nuisance to the neighborhood. More specifically, the complaint claimed Malka's parties had resulted in loud noises late into the night, 35 complaints to the Los Angeles Police Department, the explosion of professional-grade fireworks, multiple incidents of street racing, the arrest of 9 people (including Malka herself) on narcotics charges, and a reported shooting. Finally, the exhibits showed that because Malka had prepaid her rent for a year, Encinostar had written her a refund check of $78,300, representing a return of the rent that covered the period from August 2022 onward.

2

In October 2022, Encinostar sought and received an order permitting service by posting under Code of Civil Procedure section 415.45.[1]  On November 7, 2022, Encinostar requested permission to deposit the $78,300 refund with the court, which was granted.  Service of process on Malka was completed on November 10, 2022.  On December 1, 2022, the trial court clerk entered default judgment granting Encinostar possession of Woodley House.

The Los Angeles County Sheriff's Department (LASD) served Malka with a Notice to Vacate on December 26, 2022.  On January 5, 2023, Malka filed an ex parte application to stay the writ of execution and shorten time on a motion to set aside the default judgment.  Among other things, Malka argued that Encinostar was not her landlord and that she had never been properly served.  After a hearing, the trial court denied the ex parte application.

On January 17, 2023, Malka filed a motion to reconsider the ruling on her ex parte application, and an application to shorten time on that motion.  On the same day, Malka was permanently locked out of Woodley House by LASD.  On January 23, 2023, the trial court denied the application to shorten time on Malka's motion for reconsideration.  On January 31, 2023, Encinostar belatedly served notice of entry of the default judgment on Malka, by mailing the notice papers to Woodley House.

On March 10, 2023, Malka filed an ex parte application for a temporary restraining order halting enforcement of the judgment.  The memorandum accompanying the application was over 200 pages long and appeared to ask, among other things, for removal of the case to federal court, dismissal of the

---

[1]     All future statutory references are to the Code of Civil Procedure, unless otherwise stated.

3

case, and/or permission to file a cross-complaint against Encinostar. The trial court denied the application.[2]

Malka's motion to reconsider was heard on March 13, 2023. In that motion, she argued Encinostar was not her landlord, she had never been properly served, and Encinostar had breached its obligations to her. In opposition, Encinostar argued Malka had failed to present any new facts or evidence that could not have been presented in her original ex parte application. The court agreed with Encinostar, denying Malka's motion on the basis that her arguments were either irrelevant, not new, or should have been raised in the original ex parte application.

On March 13, 2023, Malka also filed an ex parte application to quash service of the summons and complaint. Malka argued her case should be reviewed by the federal courts, claimed the trial judge had become her "opponent," cited various federal authorities, and repeated her contentions that Encinostar was not her landlord and she was never properly served. The court denied that ex parte application.

On March 20, 2023, Malka filed a notice of appeal from the default judgment and the court's subsequent orders.[3]

---

[2] On May 9, 2024, Malka filed a motion in this court to correct the record concerning her ex parte application and the trial court's ruling; that motion was denied on June 6, 2024. On June 21, 2024, Malka filed a petition for rehearing regarding her motion; that petition is now also denied.

[3] Encinostar's request for judicial notice filed November 20, 2024, is denied as to items 1-2 (webpages from a property information service) and 4-11 (court filings in other actions). It is granted as to item 3 (a recorded deed to Woodley House) only.

**DISCUSSION**

Malka argues the trial court was taken in by various alleged misrepresentations made by Encinostar's counsel. She also contends the trial court failed to adequately consider her position and took sides in her case. We conclude the trial court did not err. We discuss the judgment first, and the post-judgment orders sequentially thereafter.

I.      *Default Judgment*

A defendant may challenge a default judgment in three ways: by direct appeal from the judgment, by filing a motion to set aside the judgment, and by collateral attack on the judgment. (*First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 43–44 (*First American*).) "In an appeal from a default judgment, review . . . is limited to questions of jurisdiction, sufficiency of the pleadings and excessive damages." (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 824 (*Garber*).) Where jurisdiction is challenged because of a factual dispute regarding proper service of process, we review the trial court's determination for abuse of discretion. (*First American, supra,* 87 Cal.App.5th at p. 42.) Where the sufficiency of the pleadings is challenged, our review is de novo. (See *The Inland Oversight Committee v. City of San Bernardino* (2018) 27 Cal.App.5th 771, 780.)

A.      *Service of Process*

It is not disputed that Encinostar sought and obtained an order to serve Malka by posting and mailing, as permitted by section 415.45. And Malka concedes service was effectuated in that manner on November 10, 2022. Nevertheless, Malka asserts generally that service was improper, and

specifically that the order to post was improperly granted.[4]  Because the only developed explanation for either position comes in her reply brief, those arguments are forfeited.  (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 (*Golden Door*).)

B.    *Sufficiency of the Allegations*

Section 1161 defines an unlawful detainer to include "the maintenance or commission of a nuisance" on the premises, and entitles the landlord to possession "upon service of three days' notice to quit."  Encinostar's complaint alleges Malka was served with three days' notice to quit for maintaining a nuisance on the premises.[5]  Malka responds that Encinostar is not her landlord.

The form lease attached to the complaint identifies one Yoram Stern (Stern) as the landlord.  The lease is signed by Stern and makes no reference to Encinostar.  The body of the complaint alleges Encinostar owns the property and Stern signed the lease as Encinostar's agent.  Stern verified the complaint, identifying himself as a managing member of Encinostar.

This is sufficient to establish Encinostar's status as landlord.  "An agent represents his principal for all purposes within the scope of his actual

---

[4]    Malka mentions non-compliance with section 415.46, which governs service of a claim of right to possession on persons who may occupy the property but are not authorized tenants or subtenants.  This section does not apply to Malka.

[5]    Malka disputes the facts alleged in the complaint and describes from her perspective the history of strife between herself, the neighbors, the police, the landlord, and counsel.  Because a default operates as an admission of the truth of the allegations in the complaint (*Garber, supra,* 150 Cal.App.4th at p. 823), Malka's description is not legally relevant.  The only issue is whether the allegations of the complaint, if true, are sufficient to state a cause of action.  (See *id.* at p. 824.)

6

or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." (Civ. Code, § 2330.) This remains true even if the existence of the principal, and the status of the agent as agent, is not disclosed to the person on the other side of the transaction. (*American Builder's Assn. v. Au-Yang* (1990) 226 Cal.App.3d 170, 176.) The only exception is if the terms of the agreement itself specifically exclude the possibility of an undisclosed principal. (*Ibid.*) Here, the terms of the lease contain no such exclusion.

Malka argues such an exclusion should be implied in the hand-written words "Not applicable" placed next to the section for "Agency" on the fifth page of the lease form. But the section rendered inapplicable by those words is designed to confirm that either landlord or tenant used a real estate agent of a particular type, and that certain required forms have been provided. Removal of that section does not exclude the possibility of an undisclosed principal.

Malka also complains that Stern's verification of the complaint, which she calls a "verification of agency," is intentionally darkened and obscure. While the document does appear to be darkened, perhaps in the process of copying or scanning, it remains legible. Whether intentional or not, no authority suggests any legal consequence should result from this darkening. Malka cites the statute that requires the caption of a complaint to include the names of all parties, but that citation is not on point. (§ 422.40.)

II.     *Post-Judgment Proceedings*

As noted above, Malka filed four ex parte applications after the judgment was entered, and a motion to reconsider the ruling on one of those

7

applications. "An order denying a motion for reconsideration is not separately appealable, but may be reviewed as part of an appeal of the order subject to the motion." (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 916.) We review the denial of ex parte applications and motions for reconsideration under an abuse of discretion standard. (*People ex rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257; *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 42.) A trial court abuses its discretion only when its decision goes beyond the bounds of reason into the realm of the "arbitrary, capricious, patently absurd, or even whimsical." (*Artus v. Gramercy Towers Condominium Assn.* (2022) 76 Cal.App.5th 1043, 1051.)

A.    *Application to Stay Execution*

After judgment was entered, Malka first filed an application to stay execution of the judgment and shorten time on a motion to set aside the default. This application was not supported by the declarations required by California Rules of Court, rule 3.1201; instead, exhibits were attached directly to the memorandum. It did not contain a proposed order and no motion to set aside the default had yet been filed; in fact, no such motion was ever filed. The trial court did not abuse its discretion by denying the application.

B.    *Application to Shorten Time on Motion to Reconsider*

Malka filed a motion to reconsider the denial of her ex parte application. She then filed an application to shorten time on that motion. This application was accompanied by a proposed order, but not by the required declarations. Malka makes no developed argument challenging the

8

court's denial of this ex parte application, and therefore any such argument is forfeited. (*Golden Door, supra,* 50 Cal.App.5th at pp. 554–555.)

### C. *Motion to Reconsider*

A party seeking reconsideration must not only supply "new or different facts, circumstances, or law," they must also supply a declaration identifying what new or different matters "are claimed to be shown." (§ 1008, subds. (a) & (b).) Further, the moving party must offer a satisfactory explanation for their failure to raise these issues before. (*Dickson v. Mann* (2024) 103 Cal.App.5th 935, 950–951.) In other words, the new information must not be something a diligent party or counsel could have found and produced at the original hearing. (*Ibid.*)

Encinostar argues Malka's motion failed to meet those requirements. Malka does not directly respond, arguing instead that she never received proper notice about what was going on in the case. On reply, she argues there is now even more new evidence which should be considered by this court in the first instance. We need not resolve these issues because, as Encinostar also points out, granting Malka's motion would have been an idle act. (See Civ. Code, § 3532.)

Malka's motion to reconsider was heard, as scheduled, on March 13, 2023. At that point in time, the primary request made in Malka's original application—to stay execution of the judgment—was moot. Malka had been locked out of Woodley House for nearly two months. The secondary request made in the application—shortened time on a motion to set aside the default—was not ripe because Malka never filed such a motion. There was nothing to shorten time on. Under these circumstances, the trial court did not abuse its discretion by denying Malka's motion.

D.     *Application For Temporary Restraining Order*

Malka's third application, filed after the documents discussed above but just before the hearing on the motion for reconsideration, asked for a temporary restraining order, an injunction, a "writ of repossession," dismissal of the case for fraud on the court, removal of the case to Federal Court, re-assignment of the case to the complex departments, a remedy for "violation of civil rights," release of the funds held by the court, and an extension of time to file reply objections on her motion for reconsideration.

According to Malka, the trial court never ruled on that application.[6] That is not correct. The court issued a minute order dated March 13, 2023, which shows the application was denied. Further, Malka submitted an audio recording of the hearing from that date. At the beginning of that recording (which does not cover the entire proceeding) the trial court can be heard denying first a peremptory challenge under section 170.6, and then "two other challenges to my jurisdiction . . . [which] your papers seem to direct them toward, your comments toward, the [federal] district court." That statement seems to describe the application now at issue, and thus indicates the application was denied during the hearing in open court. But regardless of how the recording is interpreted, ex parte applications may be, and commonly are, decided by the court in chambers without hearing oral argument. (See § 166, subd. (a)(1).)

We need not discuss in detail the requests made in this lengthy application. "[A] party who is in default is barred from further participation

---

[6]     Elsewhere in her briefing, Malka argues the trial court denied "motions" without proper hearings, though she does not specifically identify which filings she means. This may be a reference to her ex parte applications; the only motion in the record is the motion for reconsideration, which was properly heard on March 13, 2023.

in the proceedings." (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 343.) The only legal options available to a defaulted party are compliance with the judgment or a challenge to the default in one of the three ways listed above. (*First American, supra,* 87 Cal.App.5th at pp. 43–44.) Because Malka was in default, she was only entitled to seek an order setting aside the default, or else an order disbursing the prepaid rent money Encinostar had deposited with the court.

Assuming Malka's application sought those remedies, the court did not err in refusing to award them on an ex parte basis. Unless expressly permitted by statute, ex parte applications are reserved for emergencies only. (See Cal. Rules of Court, rule 3.1202(c).) There should be "good cause to dispense with proceeding by noticed motion." (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 523, 551, fn. 30.) Here there was none. Malka had been locked out of Woodley House for two months; there was no emergency connected to her tenancy. Nor does she suggest an immediate need for the deposited funds other than to assert her legal position in this case. The court did not abuse its discretion by denying the application under these circumstances.

E.     *Application to Quash Service of Summons*

The fourth and final application, filed by Malka on March 13, 2023, for hearing that same day, sought to quash service of the summons and complaint. Malka argues the court failed to rule on this application as well; that is incorrect, for the same reasons given above. The application was denied. And the denial was proper for two reasons. First, the statute authorizing a request to quash the summons and complaint specifies that the request should be made by noticed motion. (§ 418.10, subds. (a) & (b).)

11

Second, as already explained, there was no emergency which would support an ex parte application under these circumstances.

III. *Conclusion*

Once a default judgment is entered, the law confines both the courts and the defaulted defendant to a specific set of narrow pathways. Malka elected first to challenge the entry of default judgment before the trial court in the same proceeding. However, she never filed a noticed motion to set aside the default. And the court was not required to permit her challenges to proceed by ex parte application. Malka elected next to challenge the judgment on direct appeal. But on such an appeal, we are only permitted to consider the sufficiency of the allegations and any jurisdictional issues properly raised. For the reasons given above, we conclude the allegations were sufficient and any challenges to the court's jurisdiction have been forfeited.

We were also called upon to review the trial court's denial of Malka's request, made on an ex parte basis, for the release of the rent money deposited with the court by Encinostar. While we conclude the trial court's refusal to disburse those funds on an emergency basis was appropriate, we express no opinion on the underlying merits of the request. Malka remains entitled to bring a noticed motion for the release of those funds.

//

//

//

//

12

## DISPOSITION

The judgment and orders of the trial court are affirmed.  Respondent Encinostar shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


MORI, J.


DAUM, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.